IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHAD TAITTS, individually, and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br>     v.<br><br>ELIOR, INC., and PREFERRED MEAL SYSTEMS, INC.,<br><br>                           Defendants | Case No. |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1453, Defendants Elior, Inc. ("Elior") and Preferred Meal Systems, Inc. ("Preferred Meal") (collectively, "Defendants") hereby provide notice of removal of this action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois. In support of this Notice of Removal, Defendants state as follows:

## BACKGROUND

1. On April 1, 2020, Plaintiff Rashad Taitts, individually and on behalf of putative class members, filed a Class Action Complaint (the "Complaint") against their former employer, Defendant Preferred Meal,[1] in Cook County, Illinois, captioned *Rashad Taitts v. Elior, Inc. and Preferred Meal Systems, Inc. et al.*, No. 2020-CH-3664) (attached as Exhibit A).

2. The Class Action Complaint alleges that Plaintiff Taitts worked for Preferred Meal from approximately February 2020 through March 2020, at its location at 5420 St. Charles Rd.,

---

[1] As detailed within the attached Crawford Affidavit, Exhibit B, Defendant Elior has never employed Plaintiff and thus has never collected any of Plaintiff's "biometric identifiers" as defined by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. *See* Affidavit of Nicholas Crawford, attached as Ex. B.

1

Berkeley, IL. (Ex. A, ¶ 44). The Complaint asserts three counts based on various purported violations of BIPA: (1) noncompliance with Section 15(a) of BIPA pertaining to the establishment of a biometric retention schedule and destruction guidelines; (2) noncompliance with Section 15(b) of BIPA pertaining to collection, storage, and use of biometric data; and (3) noncompliance with Section 15(d) of BIPA pertaining to disclosure and/or dissemination of biometric data. *Id.*

3. While employed by Preferred Meal as a forklift operator at Preferred Meal's Berkley, IL facility, Plaintiff Taitts (along with other putative class members) was a member of a union—the Chicago and Midwest Regional Joint Board, Workers United ("the Workers Union") - which is Taitts' sole and exclusive bargaining agent. See Ex. C at ¶ 6-8, Affidavit of Angela Brumfield. Defendant Preferred Meal and the Workers Union are parties to a collective bargaining agreement ("Workers Union CBA") that was negotiated by the parties and governs the terms and conditions of employment for all Preferred Meal employees that belong to the Workers Union, including most of the members of the putative class. See Ex. B at ¶ 8, Affidavit of Nicholas Crawford. A true and correct copy of excerpts of the current Workers Union CBA for the time period of December 15, 2017 through December 14, 2020 is attached to the Crawford Affidavit as "Exhibit 1."

4. The parties to the Workers Union CBA, including Preferred Meal and most of the putative class, agreed that "the majority of the employees employed by the Employer and covered by this Agreement have duly designated the Union as their exclusive bargaining representative for the purposes of the collective bargaining with the Employer with respect to rates of pay, wages, hours and other conditions of employment." (Ex. B-1, Workers Union CBA, at 2). In other words, the Workers Union is the sole and exclusive bargaining agent for its respective members, including

Plaintiff Taitts and members of the putative class in this litigation. (Ex. C; Ex. B-1, Workers Union CBA, at 3).

11.  Article 35 of the Workers Union CBA sets forth a "Management Rights" clause which provides that the Employer (Defendant Preferred Meal) retains the authority to manage its businesses, control their premises, and direct their working forces, subject to the provisions of the Workers Union CBA. (Ex. B-1, Workers Union CBA, at 22). With respect to Defendant Preferred Meal, the right to manage includes, but is not limited to, the right to "assign employees to a regular work schedule." (Ex. B-1, Workers Union CBA, at 4).

12.  Article 21 of the Workers Union CBA contains multi-step grievance and arbitration procedures for the resolution of employee disputes. The Workers Union CBA requires that any issues or disputes involving employers such as Defendants and Workers Union members, related to "any and all disputes, complaints, controversies, claims or grievances whatsoever between the Union or the Employer [Preferred Meal], which directly or indirectly arise under, out of or in connection with or any manner relate to this Agreement [the Workers Union CBA] or the breach thereof, or the acts, conduct or relations between the parties" shall be resolved solely by using the grievance procedures provided in the CBA. (Ex. B-1 at 16). The last step in the grievance procedure process involves final and binding arbitration between or amongst the parties involved. (*Id.* at 17).

## REMOVAL IS PROPER UNDER 28 U.S.C. § 1331

13.  Removal is proper under 28 U.S.C. § 1331 because this Court has federal question jurisdiction over Plaintiffs' claims.

14.  A federal district court has federal question jurisdiction over a claim, and removal is therefore proper on that basis, when the claim is completely preempted by Section 301 of the

3

Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 141, *et seq*. *See Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498-99 (7th Cir. 1996). "Section 301 preempts claims directly founded on or substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 498 (internal citations omitted). "If the resolution of a state law claim depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Id.* at 499. That is to say, "if it is necessary to interpret express or implied terms of a [collective bargaining agreement], a state law claim is completely preempted by Section 301, the claim is deemed federal in nature from its inception, and the complaint is deemed one that a defendant can remove." *Id.*; *see also Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988) (section 301 completely preempts a state-law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement"); *see also Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015) (explaining that a "state law claim requires the interpretation of a collective bargaining agreement" even when just "*an element* of the claim requires a court to interpret any term of a collective-bargaining agreement") (internal citations omitted).

15. In *Fernandez v. Kerry, Inc.*, 21-1067 (7th Cir. Sept. 20, 2021) (Exhibit D hereto), the Seventh Circuit recognized that timekeeping methods are a proper subject of collective bargaining between an employer and a union acting as the employees' exclusive and legally authorized representative, and their agreement concerning those methods is governed by the LMRA. *Id*. at 2 (citing *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903-05 (7th Cir. 2019) (noting that "provisions in the Railway Labor Act parallel to Section 301 prohibit workers from bypassing their unions and engaging in direct bargaining with their employers about how to clock in and out")). Additionally, the Court in *Kerry* explained that disputes over biometric timekeeping

4

systems (like the one alleged in this case) necessarily require interpretation of the underlying collective bargaining agreement because that is the only way to know whether the union consented to the purported timekeeping system on the employees' behalf. As the Court noted, "[i]f an employer asserts that a union *has* consented [to the timekeeping system], then any dispute about the accuracy of that contention is one about the meaning of a collective-bargaining agreement and must be resolved between the union and the employer." *Id*. at 2 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

16. Further, the Court in *Kerry* ruled for the first time that the LMRA *completely* preempts a unionized employee's state-law BIPA claims. *Id*. at 3-4. The Court extended its previous holding in *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019),[2] which found that the Railway Labor Act preempts state-law BIPA claims, by explaining that its recent decision reviewing *Miller* in *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1156 (7th Cir. 2020), "suggested that the same result would obtain in litigation under the LMRA." *Id*. at 3. Indeed, courts in this District and others have made this comparison between the RLA and the LMRA

---

[2] In *Miller*, the Seventh Circuit held that BIPA claims related to a finger scan time clock were preempted by federal labor law and ordered that the claims be dismissed to arbitration. It reasoned that a union may be an employee's "legally authorized representative" under BIPA and may consent on the employee's behalf to the collection and use of biometric data. 926 F.3d at 903. Therefore, it held that whether the unions "did consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an adjustment board." *Id.* Further, the Seventh Circuit explained that "the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.* The Court also stated that the fact that BIPA "concerns workers' privacy does not distinguish it from many other subjects, such as drug testing, that are routinely covered by collective bargaining and on which unions give consent on behalf of the whole bargaining unit." *Id.* at 904. Then, concisely summarizing its rationale, the Seventh Circuit concluded: "It is not possible even in principle to litigate a dispute about how an [employer] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf. That's why this dispute must go to an adjustment board." *Id.*

preemption provisions, too. *See, e.g., Hicks v. Evergreen Living & Rehab Ctr.*, LLC, 2021 WL 4440315, at *4 (N.D. Ill. Mar. 8, 2021) ("Although *Miller* involved preemption under the Railway Labor Act, the preemption standard under that statute is 'virtually identical' to the preemption standard applicable under Section 301 of the LMRA.") (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)); *see also Roberson v. Maestro Consulting Services LLC*, 2020 WL 7342693, at *9 (S.D. Ill. Dec. 14, 2020) (relying on *Fox* and noting that "district courts within this circuit have consistently found that BIPA claims from unionized employees are preempted by federal labor law"). Yet it was not until the Seventh Circuit's decision in *Kerry* that a higher court conclusively held the LMRA (like the RLA) *completely* preempts unionized employees' BIPA claims, which provides grounds for removal in this case. *See Rea v. Michaels Stores*, 742 F.3d 1234, 1238 (9th Cir. 2014) (intervening decision of higher court may permit removal); *see also Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534 (7th Cir. 2008) (a decision in another case that resolves federal jurisdiction may provide grounds for removal).

17. Based on *Kerry*'s holdings, there is now no doubt that federal question jurisdiction exists in this case. Plaintiff was a unionized worker who brings BIPA-related timekeeping claims against his former employer. Those claims are subject to the bargaining terms of the agreements entered into between his former employer Preferred Meal and its union, and the claims require interpretation of these agreements to understand what their union consented to on their behalf. The collective bargaining agreements between Preferred Meal and Plaintiff's union include broad management rights clauses and mandatory grievance procedures that include arbitration. As *Kerry* makes clear, this action is now completely preempted by Section 301 of the LMRA. *See also Lingle*, 486 U.S. 399, 413 (1988) (federal district courts have exclusive jurisdiction over suits that

require "the interpretation of a collective-bargaining agreement"). Thus, removal to this Court is proper.

### PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

18. Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." This Court and the Seventh Circuit have recognized that a case may "become removable" if "intervening events justify that step." *See Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782-83 (7th Cir. 1999); *see also Colon v. Dynacast, LLC*, No. 20-cv-3317, Mem. Order & Op., Dkt. 26 (N.D. Ill. Feb. 10, 2021) (removal was proper in BIPA case after intervening Seventh Circuit decision defined a concrete injury under BIPA in a way that conferred Article III standing on plaintiff where none had existed before); *Amgen*, 516 F.3d at 534 (explaining a new basis for removal may exist where a "different case resolve[s] a legal uncertainty concerning the existence of original federal jurisdiction," such as the case here); *cf. Douthit v. Janssen Research & Dev., LLC*, 2017 WL 4224031, at *6 (S.D. Ill. Sept. 22, 2017) (same; citing *Amgen*). An intervening event may include a decision in a wholly separate case that reveals a "relevant change of circumstances" permitting removal. *Rea*, 742 F.3d at 1238 (where prior controlling federal law did not support removal, intervening Supreme Court decision in a different case changing the law and establishing subject-matter jurisdiction was a "relevant change of circumstances" justifying removal).

19. Defendants are aware of the Seventh Circuit's recent decision in *Railey v. Sunset Food Mart*, No. 21-2533 (7th Cir. Oct. 15, 2021), affirming the district court's decision to remand

7

in a BIPA class action suit, but believes that case is not applicable here. In *Railey*, the defendant removed to federal court based on the view that plaintiff's claims were completely preempted by the LMRA, but the facts surrounding removal distinguish *Railey* from this case. In *Railey*, the defendant sought removal claiming that discovery responses revealing plaintiff's membership in a union were the first time that defendant had notice that plaintiff's claims may be preempted by the LMRA. The Court disagreed, determining that the defendant had in its possession information regarding plaintiff's membership in a union, and could not "feign ignorance about information within its control." *Id.* at p. 10 ¶ 2. The court held that based on the facts of that case, defendant had the information necessary to recognize that the LMRA may preempt the plaintiff's claims and therefore the 30-day removal clock started when the plaintiff served her complaint. *Id*. at p. 11 ¶ 2. In this case, Defendants are not claiming that any factual discovery started the clock for removal, but that a clarification of law through a higher court's decision provided notice that the case is now removable. Therefore, *Railey* is not applicable to the present case.

20. The Seventh Circuit's decision in *Kerry* constitutes an "order or other paper" that reflects an intervening event—a change in the law—"from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Rea*, 742 F.3d at 1238 (change in the law permits removability). Prior to *Kerry*, no court had directly held that the LMRA completely preempts unionized workers' state-law BIPA claims. The change in circumstances post-*Kerry* reflects a significant development in case law that alters several litigation factors for some BIPA plaintiffs, including venue, the application of state or federal law, and available relief and damages. Following the Seventh Circuit's ruling in *Kerry*, a new basis for demonstrating federal question jurisdiction and ascertaining removability now exists. As such,

8

*Kerry* presents intervening new law that satisfies procedural statutory requirements for removability in this case.

21. Pursuant to 28 U.S.C. § 1446(b)(1), this Notice of Removal is timely filed because it is filed within 30 days of the Seventh Circuit's September 20, 2021 decision in *Kerry*.

### APERION HAS COMPLIED WITH ALL PREREQUISITES FOR REMOVAL

22. Counsel for Defendants certify that a copy of this Notice of Removal is being contemporaneously filed with the Clerk of the Circuit Court of Cook County, pursuant to 28 U.S.C. § 1446(d).

23. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Aperion in the State Court Action are attached hereto as Exhibit E.

24. Defendants reserve the right to amend or supplement this Notice of Removal, and reserve all rights and defenses, including those available under Federal Rule of Civil Procedure 12.

WHEREFORE, Defendants hereby remove the above-captioned civil action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois.

Dated: October 20, 2021

Respectfully submitted:

O'HAGAN MEYER LLC

By: /s/ Matthew E. Szwajkowski

One of the Attorneys for Defendants, ELIOR, INC. and PREFERRED MEAL SYSTEMS, INC.

Jamie L. Filipovic (ARDC #6278943)
Matthew E. Szwajkowski (ARDC #6293917)
O'HAGAN MEYER LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 422-6100
jfilipovic@ohaganmeyer.com
mszwajkowski@ohaganmeyer.com

## **CERTIFICATE OF SERVICE**

I, Matthew E. Szwajkowski, an attorney, hereby certify that on October 20, 2021, I caused a true and correct copy of the foregoing **NOTICE OF REMOVAL** to be electronically filed with the Clerk via the Court's ECF system and served via electronic mail upon the following counsel of record addressed as follows:

> Ryan F. Stephan
> James B. Zouras
> Megan E. Shannon
> Stephan Zouras LLP
> 100 N. Riverside Plaza, Suite 2150
> Chicago, Illinois 60606
> rstephan@stephanzouras.com
> jzouras@stephanzouras.com
> mshannon@stephanzouras.com
>
> *Attorneys for Plaintiffs*

                                                          */s/ Matthew E. Szwajkowski*